# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

ALEXANDER ARMIJO,

      Plaintiff,

v.

LEROY GARCIA, in his official and individual capacities,

      Defendants.

---

## COMPLAINT

---

Plaintiff Alexander Armijo, by and through his attorneys Darold W. Killmer, Andrew McNulty, and Tania Valdez of KILLMER, LANE & NEWMAN, LLP, respectfully alleges for his Complaint as follows:

### INTRODUCTION

1.      In 2018, social media platforms, like Facebook, provide "perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1737 (2017). Facebook allows any person with an internet connection to "become a town crier with a voice that resonates farther than it could from any soapbox." *Reno v. American Civil Liberties Union*, 521 U.S. 844, 870 (1997). Defendant Leroy Garcia, President of the Colorado State Senate and Senator for Senate District 3, has misused this powerful tool to stifle the voice of those who are critical of him.

2.      Plaintiff Alexander Armijo is a concerned citizen, and constituent of Defendant Garcia, who has posted comments critical of Defendant Garcia on Defendant Garcia's Facebook

1

page. For that, Defendant Garcia removed Mr. Armijo's comments and banned him from posting any further messages. Defendant Garcia's practice of stifling valid criticism is unconstitutional, and this suit seeks to end it.

## JURISDICTION AND VENUE

3.      This action arises under the Constitution and laws of the United States and is brought pursuant to 42 U.S.C. § 1983. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331.

4.      Jurisdiction supporting Plaintiff's claim for attorney fees and costs is conferred by 42 U.S.C. § 1988.

5.      Supplemental pendent jurisdiction is based on 28 U.S.C. § 1367 because the violations of federal law alleged are substantial and the pendent causes of action derive from a common nucleus of operative facts.

6.      Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All of the events alleged herein occurred within the State of Colorado, and all of the parties were residents of the State at the time of the events giving rise to this Complaint.

## PARTIES

7.      At all times relevant to this complaint, Plaintiff Alexander Armijo was a citizen of the United States of America and a resident of the State of Colorado.

8.      At all times relevant to this Complaint, Defendant Leroy Garcia was a citizen of the United States and a resident of the State of Colorado. At all relevant times, Defendant Garcia was acting within the scope of his official duties and employment and under color of state law in his capacity as President of the Colorado State Senate and Senator for Colorado Senate District 3.

## FACTUAL ALLEGATIONS

Facebook is a public forum in which political speech is engaged in, disseminated, and debated.

9.      Facebook is a social media platform with more than 2.23 billion monthly active users, as of June 30, 2018. In the United States, approximately two-thirds of adults are Facebook users. Facebook allows its users to publish messages of any length (or publish Facebook "posts"), to republish other users' posts, and to respond to (or "comment on") other users' posts. Speech on Facebook ranges from birthday wishes to heartfelt reconnections to political discourse. Particularly relevant to this lawsuit is the amount of speech by, to, and about the government at all levels that occurs on Facebook on a daily basis.

10.     Facebook users are those with an account that has been created on the platform. A Facebook user's "profile" includes the user's name, a description of themselves, biographical information, work history, and other web pages maintained by the user. A Facebook "profile" is a personal account on Facebook.

11.     In contrast, a Facebook "page" is a user account created by a public figure. Many public officials create Facebook user "pages" that represent their official capacity as a government, or public, official. These pages are called "Community or Public Figure" pages and differ from personal Facebook user profiles in appearance and content. Facebook users who maintain "pages" often describe their official position on their page.

12.     By default, Facebook profiles and pages are visible to everyone with internet access. Although non-users can view users' Facebook webpages, they cannot interact with users on the Facebook platform without an account.

13.     A Facebook user's webpage displays all posts generated by the user, with the most recent posts appearing at the top of the page. This display is known as a user's "timeline."

When a user posts on Facebook, the user's timeline immediately updates to include that post. Anyone who can view a user's public Facebook page can see the user's timeline.

14.     A user can post on their own timeline, or on another user's timeline. Facebook posts can include photographs, videos, and links. Users can post links to news articles.

15.     By default, any Facebook user can comment on any other user's posts or timeline. Any Facebook user can also reply to another user's comment on a third user's post. The collection of replies and replies-to-replies is sometimes referred to as a "comment thread." Facebook's comment threads are a large part of why it is a social media platform. Comment threads reflect multiple overlapping conversations among and across a group of users.

16.     Facebook users are able to post and comment on Facebook public figure pages freely, unless they are "banned."

17.     Defendant Garcia maintains an official Facebook page. On the "Home" section of his official Facebook page, Defendant Garcia describes himself as "Senator Leroy Garcia." Defendant Garcia presents his page to the public as one he operates in his official capacity rather than his personal capacity. Defendant Garcia's page is generally accessible to the public at large without regard to political affiliation or any other limiting criteria. Any member of the public can view his posts. Any Facebook user who wants to follow Defendant Garcia's page can do so and his page has 2,121 followers. Any Facebook user can also comment on Defendant Garcia's posts, unless they have been banned. Defendant Garcia uses his page to promote official government business and he uses the account to directly communicate with his constituents in his official capacity as both a State Senator and Senate President.

18.     Below is a screenshot of the "Home" section of Defendant Garcia's official Facebook page:



19.    Defendant Garcia's official Facebook page also has an "About" section. In the

"About" section, Defendant Garcia lists himself as a Public Figure. He lists his contact

information as his official state senate email address and phone number. Defendant Garcia also

lists his biography and describes himself as "President of the Colorado State Senate & Senator

for Senate District 3."

20.    Below is a screenshot of the "About" section of Defendant Garcia's official

Facebook page:

**About**

CONTACT INFO

Call (303) 866-4878

leroy.garcia.senate@state.co.us

http://www.leroygarcia.org

@Leroy_Garcia

senleroygarcia

MORE INFO

Biography

President of the Colorado State Senate & Senator for Senate District 3.

Leroy Garcia was elected in 2014 to represent Senate District 3, which covers the Cities of Pueblo, Pueblo West and part of the community in Salt Creek.

Senator Garcia has sponsored legislation to help Southern Colorado and improve the lives of citizens across the state. He was named Assistant Minority Leader at the start of the 2017 Legislative Session and Senate President at the start of the 2019 Legislative Session.

During his time in the Colorado State Senate, Senator Garcia passed legislation to create a pilot program for Pueblo and rural Colorado to address the opioid epidemic. He has supported fellow veterans through education and housing programs. He pushed to increase accountability and transparency of the utility provider in his district to help the burden of the disproportionate utility prices in Southern Colorado. He has also secured funding for and defended one of Pueblo's great cornerstones, the State Fair in Pueblo, and continued to protect Southern Colorado's water. Senator Garcia has pushed to explore transportation solutions like a potential rail line along the I-25 corridor through his work with the Southwest Chief and secured funding to make improvements on Highway 50, which runs through Pueblo. Through his leadership he has helped paved the way for a new building for the regional office of the Colorado Bureau of Investigation in Pueblo West, and new offices for the Colorado State Patrol and the Colorado Department of Transportation that will open in the spring of 2018.

Before his work in the Colorado State Senate, Senator Garcia served in the Colorado House of Representatives and was one of the youngest members to be elected and serve on Pueblo City Council.

Senator Garcia also teaches emergency medical services at Pueblo Community College and is a paramedic with American Medical Response in Pueblo.

From 2001 to 2007, Sen. Garcia served in the Marine Corps. Deployed to Iraq as a mortuary affairs specialist, he has a personal understanding of the risks faced by the members of our armed forces, and has a strong commitment to providing for our veterans. He's a member of the Pueblo Veterans Council, VFW Post 15006, American Legion Post 2 and the League of Marines Home of Heroes Detachment.

He's also a parish pianist at St. Joseph and Christ the King churches.

Sen. Garcia grew up around the Pueblo beauty salon his parents have owned and operated for more than three decades, giving him an appreciation for the power of small business in securing the American Dream.

Sen. Garcia is a first-generation college graduate, with a master's degree in organizational management from Ashford University in Clinton, Iowa; a bachelor's in management from the University of Phoenix and an associate's degree in emergency medical services from Pueblo Community College.

He lives on Pueblo's south side with his wife, Michelle Randall Garcia, and their two children, Jeremiah and Xan.

Public Figure

21.     The comment threads associated with the posts on Defendant Garcia's Facebook page are important forums for discussion and debate about government policy. His page functions as a digital town hall in which Defendant Garcia communicates official news and information to the public, and members of the public comment on that news and information to both respond to Defendant Garcia and to exchange views with other members of the public.

22.     Below are screenshots of posts that appear on the timeline associated with Defendant Garcia's official Facebook page, providing information to members of the public:







**Senator Leroy Garcia**
March 9 at 3:30 PM · 🌐

In case you missed it: This week, two priority bills I'm sponsoring unanimously passed the Senate Appropriations Committee. Senate Bill 1 will expand a treatment program to address southern Colorado's opioid crisis, and Senate Bill 65 will help create a peer health assistance program for emergency responders.

*i* About this website

SENATEDEMS.CO
**President Garcia's Healthcare Bills Unanimously Pass Senate Appropriations Committee - Colorado Senate Democrats**

👍❤️😮 66                                                                 1 Share

👍 Like                    💬 Comment                    ↗ Share

Write a comment...                                      ☺ GIF 😜
Press Enter to post.

 **Senator Leroy Garcia**
March 8 at 11:01 AM · 🌐

This morning, I was honored to welcome some of Colorado's finest to the Capitol. I know from personal experience how important first responders are to our healthcare system, and I am grateful for their hard work and dedication to saving lives and keeping our communities safe.







👍❤️😮 30                                             1 Comment

👍 Like          💬 Comment          ➤ Share





23.     Defendant Garcia's Facebook page is controlled completely by him in his official capacity as a State Senator and Senate President. Defendant Garcia controls who may view the comments on his posts and who may comment on his posts.

24.     By default, Facebook profiles and pages are visible to everyone with internet access. Although non-users can view users' Facebook webpages, they cannot interact with users on the Facebook platform without an account.

25.     By default, any Facebook user can comment on any other user's posts or timeline. Any Facebook user can also reply to another user's comment on a third user's post. The collection of replies and replies-to-replies is sometimes referred to as a "comment thread." Facebook's comment threads are a large part of why it is a social media platform. Comment threads reflect multiple overlapping conversations among and across a group of users.

26.     While Facebook profiles can be "protected" by users, which results in limits on who can see the user's timeline and who can search for their posts, Facebook pages cannot be limited in this way. Facebook pages are inherently open to the public.

27.     Users and creators of Facebook's pages, however, can "ban" individuals. When a user with a Facebook page "bans" an individual, that individual can no longer comment on the user's Facebook page.

28.     If the banned user attempts to comment on a Facebook page that she or he has been banned from, she or he will only be given the opportunity to share the post and not be allowed to comment on the post. Banned users also cannot see other users' comments on a post.

29.     Below is a screenshot of what a user encounters when they are banned from commenting on Defendant Garcia's Facebook page:



← 🔍 Search ↱

Home   Posts   Videos   Photos   About   Comm

**Senator Leroy Garcia**   • • •
Nov 22, 2018 at 8:14 AM • 🌐

This Thanksgiving, I am thankful for so many things. I am thankful for the love and support of my wife, Michelle, and my two sons, Jeremiah and Xan. I am thankful to the people of Pueblo and southern Colorado for giving me the honor of serving them in the State Senate. I am thankful for the service men and women who sacrifice time with their famili… See More



👍❤️ 70                    5 Comments • 4 Shares

↱ Share

📞 Call          • • •

30.     Users and creators of Facebook's pages also have the ability to delete other users' posts on their timeline and other users' comments on their posts.

31.     As of March 18, 2019, the only comments that appear on Defendant Garcia's official Facebook page for public users to see are those that are supportive of him, his posts, his decisions, and his policies. There was not a single negative comment displayed to the public on his official Facebook page. Upon information and belief, Defendant Garcia deletes all negative comments and bans all users who post negative comments from posting on his page. Upon information and belief, Defendant Garcia curates the comments that are left on his posts to portray a slanted image to the public: that everyone agrees with his policies and decisions. The following is a sampling of the comments displayed on Defendant Garcia's official Facebook page:













<u>Defendant Garcia banned Mr. Armijo from his Facebook page and removed his comments.</u>

32.     Mr. Armijo is actively engaged in current affairs and holding elected officials to account. He is a self-described political junkie. Mr. Armijo also currently resides in Defendant Garcia's Senate District.

33.     On November 21, 2018, Senate Democrats fired the nonpartisan Senate Secretary, Effie Ameen, for allegedly partisan reasons. A new Senate Secretary, Cindy Markwell, was then hired by the Senate Democrats to replace Ms. Ameen.

34.     A day or so after Ms. Ameen was fired, Mr. Armijo read a media report that his State Senator, Defendant Garcia, had been integral to her firing. Mr. Armijo read, and discovered after doing some research, that the appointment of Ms. Markwell, which Defendant Garcia allegedly participated in, was illegal. According to state law and Colorado Senate rules, all members of the Senate must vote to elect a new secretary.

35.     On approximately November 24, 2018, Mr. Armijo called Defendant Garcia's office and asked them if they had a statement about the firing of Ms. Ameen. The staff at Defendant Garcia's office told him that Defendant Garcia had "no comment" and hung up on him.

36.     Having been unable to get a substantive response from his elected representative, Mr. Armijo turned to Facebook. Over the course of the last decade, social media, including Facebook, has become the *de facto* place to interact with elected officials directly.

37.     On November 26, 2018, Mr. Armijo wrote the following comment on Defendant Garcia's Facebook page:



38.     Mr. Armijo's comment on November 26, 2018 was the first time he had ever

posted on Defendant Garcia's official Facebook page.

39.     Defendant Garcia deleted Mr. Armijo's comment a few days after it was posted and banned him from commenting further on his page.

40.     Upon information and belief, Defendant Garcia banned Mr. Armijo, and deleted his comment, in retaliation for Mr. Armijo's criticism. His retaliatory actions were premised on Mr. Armijo's political opposition to his participation in the firing of Ms. Ameen for allegedly partisan reasons.

41.     Mr. Armijo can no longer comment on posts of Defendant Garcia's official Facebook page. He can no longer interact with other users in comment threads. Each new Facebook post by Defendant Garcia represents another discussion Mr. Armijo is foreclosed from participating in.

42.     Defendant Garcia's banning of Mr. Armijo, and the deletion of his comments and posts, was viewpoint-based. Had Mr. Armijo posted in support of Defendant Garcia's participation in the firing of Ms. Ameen, Defendant Garcia would not have banned Mr. Armijo and deleted his comments. The banning of Mr. Armijo imposes an unconstitutional restriction on his participation in a designated public forum and his right to petition the government for redress of grievances.

## STATEMENT OF CLAIMS FOR RELIEF[1]
### FIRST CLAIM FOR RELIEF
*42 U.S.C. § 1983 – First Amendment*
*Free Speech*
(Plaintiff Against Defendant)

43.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

---

[1] Plaintiff seeks only injunctive and declaratory relief against Defendant Garcia in his official capacity on all claims.

44.     At all times relevant to this Complaint, Defendant was acting under the color of law.

45.     Plaintiff was engaged in First Amendment-protected speech in his commenting on Defendant's official Facebook page.

46.     Plaintiff's speech was on a matter of public concern and did not violate any law.

47.     By banning Plaintiff from his official Facebook page, and deleting his comments, Defendant prevented Plaintiff from exercising his First Amendment rights, including his right to speak freely.

48.     Defendant's banning of Plaintiff from commenting on posts on his official Facebook page, and the deletion of his comments, was a viewpoint-based restriction on speech.

49.     Defendant's official Facebook page is a designated public forum.

50.     Defendant's conduct violated clearly established rights belonging to Plaintiff of which reasonable persons in Defendant's position knew or should have known. Viewpoint-based prior restraint on speech has been widely known as being unconstitutional for more than eight decades. *See Near v. Minnesota*, 283 U.S. 697 (1931).

51.     Defendant engaged in this conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's constitutional rights.

52.     Defendant, as Senate President, is a final policymaker for the State of Colorado, and his actions in this matter has the effect of Colorado custom, policy, and practice.

53.     The State of Colorado's customs, policies, and/or practices were the moving force behind Defendant's violation of Plaintiff's constitutional rights.

54.     Defendant's actions and/or omissions caused, directly and proximately, Plaintiff to suffer damages. The acts and inactions of Defendant caused Plaintiff damages in that he was

prevented from speaking freely on a matter of public concerns, among other injuries, damages, and losses.

## SECOND CLAIM FOR RELIEF
*42 U.S.C. § 1983 – First Amendment*
*Right to Petition the Government*
(Plaintiff Against Defendant)

55.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

56.    At all times relevant to this Complaint, Defendant was acting under the color of law.

57.    Plaintiff was engaged in First Amendment-protected petitioning in his commenting on Defendant's official Facebook page.

58.    Plaintiff's petitioning was on a matter of public concern and did not violate any law.

59.    By banning Plaintiff from his official Facebook page, and deleting his comments, Defendant prevented Plaintiff from exercising his First Amendment rights, including his right to petition the government for redress of grievances.

60.    Defendant's banning of Plaintiff from commenting on posts on his official Facebook page and the deletion of his comments was a viewpoint-based restriction on his right to petition.

61.    Defendant's conduct violated clearly established rights belonging to Plaintiff of which reasonable persons in Defendant's position knew or should have known.

62.    Defendant engaged in this conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's constitutional rights.

63.     Defendant, as Senate President, is a final policymaker for the State of Colorado, and his actions in this matter has the effect of Colorado custom, policy, and practice.

64.     The State of Colorado's customs, policies, and/or practices were the moving force behind Defendant's violation of Plaintiff's constitutional rights.

65.     Defendant's actions and/or omissions caused, directly and proximately, Plaintiff to suffer damages. The acts and inactions of Defendant caused Plaintiff damages in that he was prevented from petitioning his government for redress of his grievances, among other injuries, damages, and losses.

### THIRD CLAIM FOR RELIEF
*42 U.S.C. § 1983 – First Amendment*
*Retaliation*
(Plaintiff Against Defendant)

66.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

67.     At all times relevant to this Complaint, Defendant was acting under the color of law.

68.     Plaintiff was engaged in First Amendment-protected speech and petitioning in his commenting on Defendant's official Facebook page.

69.     Plaintiff's speech was on a matter of public concern and did not violate any law.

70.     Defendant responded to Plaintiff's First Amendment-protected activity with retaliation, including but not limited to deleting his comments and banning him from commenting on Defendant's official Facebook page.

71.     Defendant's retaliatory actions were substantially motivated by Plaintiff's exercise of his First Amendment rights.

72.     By banning Plaintiff and deleting his comments, Defendant sought to punish Plaintiff for exercising his First Amendment rights, to silence his future speech, to stop him from petitioning, and to restrict his freedom of expression, along with the future speech and expression of others. Defendant's retaliatory actions would chill a person of ordinary firmness from engaging in First Amendment-protected activity.

73.     Defendant's conduct violated clearly established rights belonging to Plaintiff of which reasonable persons in Defendant's position knew or should have known. Viewpoint-based prior restraint on speech has been widely known as being unconstitutional for more than eight decades. *See Near v. Minnesota*, 283 U.S. 697 (1931). Retaliation against an individual based on his First-Amendment-protected speech has been clearly established in the Tenth Circuit for almost two decades. *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000).

74.     Defendant, as Senate President, is a final policymaker for the State of Colorado, and his actions in this matter has the effect of Colorado custom, policy, and practice.

75.     The State of Colorado's customs, policies, and/or practices were the moving force behind Defendant's violation of Plaintiff's constitutional rights.

76.     Defendant engaged in this conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's constitutional rights.

77.     Defendant's actions and/or omissions caused, directly and proximately, Plaintiff to suffer damages. The acts and inactions of Defendant caused Plaintiff damages in that he was prevented from petitioning his government for redress of his grievances and was prevented from speaking freely on a matter of public concerns, among other injuries, damages, and losses.

**FOURTH CLAIM FOR RELIEF**
*Colo. Const. Art. II, Section 10*
*Free Speech*
(Plaintiff Against Defendant)

78.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

79.     At all times relevant to this Complaint, Defendant was acting under the color of law.

80.     The Free Speech Clause to the Colorado Constitution provides that "[n]o law shall be passed impairing the freedom of speech; every person shall be free to speak, write or publish whatever he will on any subject, being responsible for all abuse of that liberty; and in all suits and prosecutions for libel the truth thereof may be given in evidence, and the jury, under the direction of the court, shall determine the law and the fact." Colo. Const. Art. II, Section 10.

81.     The free speech rights protected by Colo. Const. Art. II, Section 10 are more expansive than those protected by the First Amendment to the United States Constitution.

82.     Plaintiff was engaged in protected free speech in his commenting on Defendant's official Facebook page.

83.     Plaintiff's speech was on a matter of public concern and did not violate any law.

84.     By banning Plaintiff from his official Facebook page, and deleting his comments, Defendant prevented (and continues to prevent) Plaintiff from exercising his right to speak freely.

85.     Defendant's banning of Plaintiff from commenting on posts on his official Facebook page, and the deletion of his comments, was a viewpoint-based restriction on speech.

86.     Defendant's official Facebook page is a designated public forum.

87.     Defendant's conduct violated clearly established rights belonging to Plaintiff of which reasonable persons in Defendant's position knew or should have known.

88.     Defendant engaged in this conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's rights under the Colorado Constitution.

89.     Defendant, as Senate President, is a final policymaker for the State of Colorado, and his actions in this matter has the effect of Colorado custom, policy, and practice.

90.     The State of Colorado's customs, policies, and/or practices were the moving force behind Defendant's violation of Plaintiff's rights.

91.     Defendant's actions and/or omissions caused, directly and proximately, Plaintiff to suffer damages. The acts and inactions of Defendant caused Plaintiff damages in that he was prevented from speaking freely on a matter of public concerns, among other injuries, damages, and losses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully request that this Court enter judgment in his favor and against Defendant, and award him all relief as allowed by law and equity, including, but not limited to the following:

   a.   Declaratory relief and injunctive relief;

   b.   Compensatory damages as allowed by law, including, but not limited to those for past and future pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, medical bills, and other non-pecuniary losses;

   c.   Punitive damages for all claims as allowed by law in an amount to be determined at trial;

   d.   Pre-judgment and post-judgment interest at the highest lawful rate;

   e.   Attorney's fees and costs; and

     f.   Such further relief as justice requires.

DATED this 25th day of March 2019.

KILLMER, LANE & NEWMAN, LLP

*s/ Andy McNulty*

_____
Darold W. Killmer
Andy McNulty
Tania Valdez
1543 Champa Street, Suite 400
Denver, CO 80202
(303) 571-1000
(303) 571-1001
dkillmer@kln-law.com
amcnulty@kln-law.com
tvaldez@kln-law.com

ATTORNEYS FOR PLAINTIFF